TRAITEL MARBLE CO. v. U. T. HUNGERFORD BRASS & COPPER CO.

Circuit Court of Appeals, Second Circuit. November 1, 1927.

No. 148.

1. Patents ⬅328—1,451,491, for guide strip for terrazzo flooring, claims 4–7, held not anticipated.

Calkins patent, No. 1,451,491, claims 4, 5, 6, 7, for a pattern and guide strip for terrazzo flooring, *held* not anticipated.

2. Patents ⬅66(4)—Patent first issued on one of two copending applications by same person held not prior art to patent on the other application.

Where two applications for patent by the same person are copending, the patent first granted is not part of the prior art to patent on the other application.

3. Patents ⬅66(4)—If claims of two patents issued on copending applications by same person are for separate inventions, last issued is valid, without patentable advance over disclosure of first.

Where two applications of the same person for patents were copending, so that the first issued of the two patents is not prior art to the other, it is not necessary to validity of the patent last issued that the claims thereof should embody a patentable advance over the disclosure of the first patent, but it is enough that the claims of one patent are for an invention separate from that of the claims of the other.

4. Patents ⬅91(4)—Patents for flexible metal strip on copending applications by same person held for separate inventions, where continuous edge, not disclosed by original patent with general claims, is added as new feature by claims of second patent.

Even though the general claims of a patent for a flexible metal strip, first issued on one of two copending applications by the same person, were not required to be limited to the disclosure, which was merely of a discontinuous lower edge, and so covered continuous as well as discontinuous edges, yet the claims of the patent later issued on the other application having added the continuous edge as a new feature designed to effect a result which would not follow on the practice of the first disclosure, except in case it had been deliberately varied, the patents were for separate inventions.

5. Patents ⬅139—Holder of two patents, by application for reissue based on one, held not to abandon claims of other, though his position involved belief of invalidity of the other.

One having two patents for a strip, the first disclosing only a discontinuous lower edge, but having claims not specifically limited thereto, and the other claiming only a continuous edge, by application for reissue patent based on the first patent, limiting his claims specifically to the discontinuous edge, and giving as his only reason for the reissue that the continuous was old in the art, did not abandon the claims of the second patent.

6. Patents ⬅120—Defense of double patenting is good only where the claims are the same.

Defense of double patenting is not available, where the claims of the two patents are not the same.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Traitel Marble Company against the U. T. Hungerford Brass & Copper Company. From a decree granting preliminary injunction, defendant appeals. Affirmed.

See, also, 16 F.(2d) 495.

Appeal from a decree of the District Court for the Southern District of New York, granting a preliminary injunction upon claims 4, 5, 6, and 7 of patent, 1,451,491, to Seward H. Calkins for a pattern and guide strip for terrazzo flooring.

The general features of the invention are described in the decision of this court in a suit between the same parties upon Calkins'

earlier patent, reissue 15,824, reported in 18 F.(2d) 66. That patent was originally applied for on November 15, 1919, and issued on March 15, 1921. It was reissued on April 29, 1924, the claims being narrowed, as will be hereinafter shown. The patent in suit was applied for on August 31, 1920, and issued on April 10, 1923, before the application for reissue of the earlier patent had been filed.

In both patents a flexible metal strip is used to lay out into patterns the upper terrazzo layer of a concrete flooring. This layer is of a depth equal only to half the width of the strip, which must in consequence be forced down into the wet lower layer of concrete. The lower half of the strip is slit at intervals, and the material struck out from the slits is bent up at right angles to the strip alternately on opposite sides, so that the resulting "ears" form stops for the descent of the strip into the concrete. In the original disclosure, the slits went to the lower edge of the strip, so that the "ears" projected laterally for half the width of the strip. The only difference between this and the claims in suit is that "ears" of less width are struck out, leaving the lower edge of the strip continuous.

Various advantages are asserted for this construction: First, a continuous edge is easier to drive into the concrete; that is, a discontinuous edge is more likely to be bent to one side in its descent. Again, "ears" of less width are more useful, since the bond is not perfect between the brass of the strip and the concrete or terrazzo, and it is desirable to make as small as possible the area of such imperfect bond.

The original claims of the first patent did not specifically limit the monopoly to strips slit through to their lower edge, and for this reason the patent was held void in a suit between the patentee and another party. Fearing the correctness of this ruling, the patentee took out the reissue, then limiting his claims specifically to the only disclosure in the specifications; that is, the discontinuous lower edge. In his application for the reissue, in abandoning the old claims, the patentee stated that, if not so limited, they would be anticipated by those references which had proved fatal to the suit just mentioned. On that showing he procured his narrower reissue claims.

In the suit between the parties hereto upon the reissued patent, this court held that, while there would have been no invention in cutting the strip through to its lower edge, had the earlier references been otherwise adequate anticipations, they were not such, and

that, although the original claims had been valid, no harm was done by the reissue.

The decision in the suit upon the original claims of the first patent having been thus discredited, the patentee took heart, brought this suit upon the second patent, and obtained the preliminary injunction now on appeal, although the patent has not been adjudicated.

The defenses raised are the invalidity of the invention as a whole by reason of its anticipation by a new reference, the British patent to Mainzer, 3,947 (1901); the abandonment of the claims in suit by the application for reissue; double patenting; anticipation by the earlier patent as part of the prior art.

Darby & Darby and Samuel E. Darby, Jr., all of New York City, for appellant.

Robert W. Hardie, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1] The general attack upon the invention we answered in our earlier opinion, and we need add nothing to what we there said, except in so far as Meinzer's patent may be thought to affect the result. It is quite plain that Mainzer had no such notion as Calkins. It is quite true that he disclosed brass strips, in some instances sunk into the concrete, to mark out the pattern of the mosaic, and that he spoke of lugs and notches in the strip to prevent it from working loose. So far as his drawings disclose, these lugs and notches are either in the concrete or in the terrazzo, never at the juncture of the two. In any event, there is no suggestion that "ears" shall be struck out from the strips to serve as stops for the descent of the strip as it is pushed into the concrete. Indeed, some of the figures show flanges actually buried in the concrete itself, which presupposes their placement before the concrete bed is finished. We think that the District Judge was quite right in ignoring such a reference, even upon motion for a preliminary injunction.

[2, 3] Calkins' earlier patent was not part of the prior art, and it is not necessary to the validity of the claims in suit that they should embody a patentable advance over the earlier disclosure. The two applications were copending, and it is a matter of indifference which of the patents issued first, provided that the claims are for separate inventions. This was held after elaborate discussion in Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121, and had been already decided in Suffolk Co. v. Hayden, 3 Wall. 315.

18 L. Ed. 76. It has often been decided in this court (Electrical Accumulator Co. v. Brush Electric Co., 52 F. 130; Thomson, etc., Co. v. Elmira, etc., Co., 71 F. 396; Kinnear Mfg. Co. v. Wilson, 142 F. 970; Victor, etc., Co. v. American, etc., Co., 145 F. 350), and is the law elsewhere (Thomson, etc., Co. v. Ohio Brass Co., 80 F. 712 [C. C. A. 6]; Century, etc., Co. v. Westinghouse, etc., Co., 191 F. 350 [C. C. A. 8]). The issuance of the first patent does not abandon the unclaimed matter in its disclosure, the pendency of the second application rebutting any such inference.

Milburn Co. v. Davis, etc., Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651, was concerned with quite another issue, that of the priority of invention between separate inventors. It held that upon that issue the disclosure, not the claims, of an unissued application was what mattered, and that applications should be treated like issued patents. It did not, because it could not, lay down any rule respecting abandonment, or what was the effect upon the rights of an inventor of allowing one of several applications to go to issue. Whatever may appear to the contrary in National, etc., Co. v. Automatic, etc., Corp., 15 F.(2d) 257 (C. C. A. 2), must be understood as not necessary to the decision of that case.

[4] Therefore all we have to do in the case at bar is to decide whether the claims in suit are for a separate invention from the original claims allowed upon the first application. Clearly the test of this question is not whether the step between the later claims and the earlier required invention. The whole discussion in the books presupposes that the disclosure would be fatal to the new claims, if it were a part of the prior art, and upon the issue of invention the disclosure, not the claims, is relevant. Where the earlier claims are for one feature of the disclosure and the later for another, no difficulty can arise; but where the earlier claims are generic and the later specific, or vice versa, the matter is not so plain. We shall for argument assume that the original claims of the first patent need not have been strictly limited to the disclosure, and, if so, they covered both continuous and discontinuous lower edges. Nevertheless the continuous edge was not originally shown, and the claims in suit added it as a new feature, designed to effect a result which would not follow upon the practice of the first disclosure, except in case it had been deliberately varied. It is familiar law that a species claim may be a good invention, notwithstanding that the genus is already in the public demesne, which implies that it is a separate invention, and the case at bar is as much an instance of that situation as though the distinction between the old and new claims were patentable. The point was raised and discussed in Thomson-Houston Co. v. Ohio Brass Co., supra, in a case where the generic patent issued last, a much more serious situation for the patentee.

[5] Next, as to the claim of abandonment. It is quite true that the patentee, timid after his initial defeat, abandoned all his original claims in the first patent. At that time he had procured the patent in suit, which had secured to him a part—perhaps, indeed, the whole—of that which he so abandoned. The logic of his position therefore necessarily involved the invalidity of the second patent. Indeed, he gave as his only reason for the reissue that the continuous edge was old in the art, and that his invention, to be valid at all, must be limited to slits running to the bottom. If, therefore, his belief as to the validity of the claims in suit, and his action upon it in that application, be relevant, the case would end. However, while abandonment is a question of intent, it is not a question of opinion. A patentee may say to twenty people that he thinks his patent void, and it will not affect his rights a particle. He must do something which expresses a purpose to dedicate his disclosure to the public. It is quite true that, so far as the earlier patent was concerned, he abandoned all the disclosure but what the reissued claims covered. No doubt, had he supposed it necessary, he would have also abandoned the claims in suit; but he did not. His action was limited to the patent which he was dealing with, and his intent must be so limited as well.

If the point is a good one at all, it must therefore be, not because he intended to abandon his later claims, but because the inconsistency of his position upon the reissue and on this suit is fatal to his case. Mere inconsistency is nothing, if no one be prejudiced. Here there can be no public prejudice, unless it was necessary to obtain the reissued claims, not only to abandon the original claims in that patent, but all claims elsewhere which covered the same matter. We can see no reason for such a conclusion. He might reduce his original claims as he pleased; the consideration for them remained only so much of the disclosure as they covered. As for the rest, it was not necessary for their support, and was, as it were, a mere gratuity to the public. And so we can see no reason to force

the effect of his action beyond his intent, or to forfeit a patent which he never meant to abandon.

[6] The last question is of double patenting, as to which it might be enough to say that it is not pleaded. However, as the question is likely to arise later, and its answer is really involved in what we have already said, we will not leave it open. The defense is good only when the claims are the same, and the discussion in Miller v. Eagle Mfg. Co., supra, was really of this point. As we have held that the original claims and the claims in suit are not the same, the defense fails. It is, indeed, quite true that Calkins gets a protection for more than 17 years for the continuous edged strip. He got it during the existence of the original generic claims, and he gets it from the claims in suit. Yet it is never an objection to an improvement patent that an earlier generic patent has covered the same structure, and each is valid, though taken out by a single inventor. O'Reilly v. Morse, 15 How. 62, 122, 133, 134, 14 L. Ed. 601. This is precisely the same situation, except that, because the applications were copending, it is not necessary that the improvement should be an invention over the matters disclosed in the other application. In view of the fact that the date of issue of an application is beyond the control of the applicant, the chance of so extending the monopoly is disregarded, and it makes no difference which of the applications issues first. Thomson-Houston Co. v. Ohio Brass Co. (C. C. A.) 80 F. 712, 726, 727.

Decree affirmed.