## HARLEY v. TRAITEL MARBLE CO.

### No. 5235.

Circuit Court of Appeals, Third Circuit.

Oct. 2, 1934.

Bernard F. Garvey, of Washington, D. C., C. Richard Allen, of Camden, N. J., and H. M. McCaughey, of Philadelphia, Pa., for appellant.

Hans von Briesen and Fred A. Klein, both of New York City, for appellee.

Before DAVIS and THOMPSON, Circuit Judges, and DICKINSON, District Judge.

DAVIS, Circuit Judge.

The questions here relate to the validity of claims 4 to 7 of United States Patent No. 1,-451,491, issued to S. H. Calkins on April 10, 1923, and claim 3 of the Calkins Reissue Patent No. 15,824, granted on April 29, 1924, both of which are owned by the Traitel Marble Company, the plaintiff below. They relate to a "pattern and guide strip" for use in laying terrazzo flooring, and to infringement by the defendant, Harley. The District Court held the patents valid and infringed, and from its decree the defendant appealed.

The patents in suit have been the subjects of litigation heretofore. Claim 1 of the reissue patent was held valid and infringed in Traitel Marble Company v. U. T. Hungerford Brass & Copper Co., 18 F.(2d) 66 (C. C. A. 2). Claims 4 to 7 of No. 1,451,491 were held valid and infringed in Traitel Marble Company v. U. T. Hungerford Brass & Copper Co., 22 F.(2d) 259 (C. C. A. 2). In a recent case, Traitel Marble Company v. Manhattan Terrazzo Brass Strip Company, 60 F.(2d) 61 (C. C. A. 2), claims 4 to 7 were held not infringed. The records in the first two cases are stipulated as part of the evidence of this case.

Terrazzo is a composition of crushed marble and cement, used for flooring. It appears that prior to 1920, a terrazzo floor was made by laying a screed coat of cement as an underbed or foundation for the terrazzo and after the screed coat had hardened sufficiently, the terrazzo mixture is spread on top of it and rolled and polished.

It had been the practice to use wooden strips in making designs in the terrazzo. A design was laid out on the screed coat with the strips which were nailed to the screed and terrazzo was poured in alternate sections of the design. When the terrazzo hardened in those sections, the strips were removed and the mixture poured into the remainder of the sections. The process caused the designs to be uneven since the sections of the designs were poured in and hardened at different times, and during the considerable period of time required for this method, the screed would become so hard that it and the terrazzo would not readily adhere to each other. Consequently, the expansion or contraction of the floor would cause cracks in the terrazzo. There was nothing to prevent these cracks from running the entire length of a floor when they once began.

Efforts had been made to correct the unsatisfactory methods used in the art by improving the pattern strips. Calkins used a thin, flat, and flexible metal strip, adapted to serve as a binder. The lower half of the strip is split at intervals by wings cut out of the metal so that they extend from the center of the strip at right angles. In the original patent the wings were not cut through the bottom edge of the strip. Both the tops and bottoms form continuous edges. The bottom edges enable the strip to be driven into the screed until the extended wings meet the screed and form stops. The thickness of the terrazzo coat is equal to the distance from the wings to the top edge of the strip, forming a protecting and dividing wall between sections of the terrazzo.

Claim 4 of Patent No. 1,451,491 is typical. It provides:

"A pattern and guide strip comprising a flexible strip of metal adapted to be forced vertically into a body of plastic material, said metal strip being provided with longitudinally spaced openings therein intermediate its opposite edges and having means projecting horizontally from one side of the strip at the upper edge of each opening, said means constituting stops limiting the penetration of one edge of the strip into the plastic material and also acting to tamp the material and urge the same within said openings."

The only difference between the invention described in No. 1,451,491 and the reissue patent is that the lateral wings in the reissue patent are slit from the center through the lower edge of the strips, making the wings wider and leaving the lower edge broken by the cutout portions. Claim 3 of Reissue No. 15,824 provides:

"A pattern and guide strip of the character described, comprising a substantially flat thin flexible strip of metal extending vertically in cross section, and having a width adapting the strip to serve as a height-guide in placing a desired thickness of plastic material on a wall or flooring, and having an uninterrupted straight upper edge defining the upper level of said plastic material, and a plurality of pairs of wings, the respective members of each pair being arranged in juxtaposition on opposite sides of said strip and extending outwardly therefrom on substantially the central longitudinal line of said strip, with the faces of said wings substantially parallel with the upper edge of said strip, said wings defining the depth of the finishing coat of said material relative to the upper surface thereof."

By using Calkins' strip, the whole of the terrazzo coating could be laid at one time. This insured uniformity of the terrazzo and cohesion between it and the screed since it could be done while the screed was semisoft. Furthermore, if cracks still appeared in the terrazzo, they would be confined by the strips to one section. Calkins asserts that his teaching has enabled the industry to reduce the cost of laying terrazzo floors by one-half and has revived a vanishing industry. The Calkins' strip has unquestionably had considerable commercial success. In ten years, over 15,000,000 linear feet of it was sold.

On the question of anticipation by the prior art, the appellant relies on the following patents: McKnight, No. 271,582 (1883); Dart, No. 421,560 (1890); Rowell, No. 533,-498 (1895); Mainzer, British patent, No. 3947 (1901); Priddle, No. 870,129 (1907), which has not been considered heretofore in connection with the patents in suit; and Kahn, No. 1,033,106 (1912).

Of those patents cited, Mainzer is nearest to Calkins in functions and uses. Mainzer relates to the use of metal strips in laying mosaic floors. He claims:

"1. A mosaic having metal strips embedded therein and arranged flush with the surface thereof for the purpose specified.

"2. A mosaic constructed as herein described with metal strips forming the outline or other lines in the design, said strips being held in place by flanges, lugs, bolts, notches or other fastenings, as described."

The difference between him and Calkins is the difference between Calkins and the methods used in the art before the patents in suit. Calkins overcame the defects in the construction of, and results obtained in, terrazzo floors. He produced a strip that was new and overcame the obstacles, which other prior strips had failed to do. Judge Learned Hand said in the second Hungerford suit (C. C. A.) 22 F.(2d) 259, 260:

"It is quite plain that Mainzer had no such notion as Calkins. It is quite true that he disclosed brass strips, in some instances sunk into the concrete, to mark out the pattern of the mosaic, and that he spoke of lugs and notches in the strip to prevent it from working loose. So far as his drawings disclose, these lugs and notches are either in the concrete or in the terrazzo, never at the juncture of the two. In any event, there is no suggestion that 'ears,' shall be struck out from the strips to serve as stops for the descent of the strip as it is pushed into the concrete. Indeed, some of the figures show flanges actually buried in the concrete itself, which presupposes their placement before the concrete bed is finished."

McKnight and Priddle relate to entirely different problems of re-enforcing concrete, and do not show a flexible strip with the Calkins' combination and were not calculated to obtain similar results. Kahn, Rowell, and Dart have even less to suggest anticipatory of Calkins.

The Calkins' strip is an application of simple principles to simple problems, and, as we look at it now, it seems that its principle should long before have been discovered by those learned in the art, particularly in view of the serious difficulties caused by the old methods. The ingenuity involved in Calkins' combinations is revealed best by the very fact that the industry had been unable to overcome the serious obstacles that were threatening it. Their commercial success, their novel features, their actual accomplishment in overcoming difficulties theretofore encountered by the trade, and their revival of a dying art convince us that the Circuit Court of Appeals for the Second Circuit did not err in holding these patents valid.

While the claims of the Calkins patents are necessarily narrow, we are of the opinion that the appellant's strip manufactured under the Harley patent, No. 1,755,001, is an infringement.

Harley shows a flexible metal strip with continuous edges and lateral stops of wings. The wings, like Calkins', determine the depth to which the lower part of the strip is forced into the screed, and the depth of the terrazzo coating. The only difference between the strips lies in the method of cutting the wings and bending them out so as to form a right angle. Calkins' slits are cut down from the center and across the lower edge, sometimes bisecting the lower edge and sometimes not, and bent upon alternating sides. Harley's slits are made by incisions on either side of the center of the strip, leaving a small section uncut at the center so that when the section is bent at right angles to the strip, it forms a wing on each side of every slit.

The invention by Calkins does not lie in the method of cutting the wings but in the combination which has resulted in successfully obtaining new objects. The appellant's strip borrows Calkins' principles and attains the same results.

The appellant contends that claim 3 of the reissue patent is invalid because Calkins disclaimed wings unless they were pressed out of the lower portion, including the lower edge of the strip and leaving a slotted lower edge. The slight difference in cutting of the wings in the reissue patent involved no change in the invention. The opinions of the Circuit Court of Appeals for the Second Circuit answer the appellant's argument and dispose of this particular question. 18 F.(2d) 66, 69; 22 F.(2d) 259, 261.

The decree of the District Court is affirmed.