## HAMILTON v. UNITED STATES.
### No. 7410.

Circuit Court of Appeals, Fifth Circuit.

Nov. 10, 1934.

R. W. Smith, Jr., of Gainesville, Ga., for appellant.

Lawton H. Ware, Veterans' Administration, of Atlanta, Ga., Dunbar Harrison, Asst. U. S. Atty., of Savannah, Ga., and Joseph H. San, Atty., Dept. of Justice, of New York City, for the United States.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

After a few months' service in the Army, Lee Hamilton was discharged on December 18, 1918, having a persistent dysentery, and he paid no premium thereafter on his war risk insurance policy. Suit was brought on it in October, 1931. After hearing the evidence offered in Hamilton's behalf, the court directed a verdict against him. His appeal presents the single question whether there was substantial evidence to show that he was totally and permanently disabled during the life of his policy. The evidence was given by himself, his wife, several relatives by blood and marriage, and by two physicians who had treated him at intervals; Dr. Hall beginning in the spring of 1919, and Dr. Fussell in September, 1920. His ailment was thought at first to be chronic dysentery, but in September, 1920, Dr. Fussell definitely diagnosed it as amoebic dysentery and discovered also heart weakness. Neither he nor Dr. Hall forbade Hamilton's working, but he was told to "go slow and take everything easy and quiet." His dysentery would get better at times, but at other times he would have to go to bed. In 1926 he went to a Veterans' Hospital, and was then first treated for his heart. The dysentery was considerably relieved, but returned afterwards, and both that and his heart trouble have gotten worse rather than better. Both doctors, after a recital to them of the definitions of total and permanent disability as given in Treasury Decision 20WR, on the facts they knew and those stated to them about Hamilton's work record, testified without objection that in their opinion he was totally and permanently disabled in December, 1918, and at the time of the trial. His work record briefly stated is that, being a

farmer, he rented a small farm in 1919 and partly worked it, but was sick a good deal and had to hire help. He made a bale and a half of cotton beside foodstuffs enough for himself and mule. He married in December of that year. In 1920, 1921, and 1922 he continued to run a one-horse farm, his wife helping with the work and her brother swapping work with him. He hired occasional day labor as he needed it. In 1923 he hired a hand regularly for six months. The farming continued through 1926 and 1927, though in both these years he spent a few weeks in a government hospital. He tried blacksmithing, but could not stand the work. The next two years he ran a dairy on halves, he and his wife milking ten cows. He has done but little since. During all his years of farming he has made from two to five bales of cotton per year, besides foodstuffs for his stock and family, by hiring help. While not able to work regularly, nor strong enough to do a man's full work, the fact remains that he did continuously make a scanty living by farming for several years after his policy lapsed. Work at times temporarily aggravated the dysentery, but it is not proven that he injured his health by work. On the contrary, Dr. Fussell says that he followed instructions and took care of himself, or he would have been dead. These facts show that while Hamilton was an ill man he was not totally but only partially disabled when his policy lapsed, and both physicians testified that his then main trouble, amoebic dysentery, is often curable, so that in January, 1919, it did not appear with any reasonable certainty that he would not get well. Evidently when he married at the end of that year he and his bride thought he would. Dr. Fussell is himself a World War veteran, and must have known that Hamilton had had insurance when he began to treat him in 1920. If he then considered him totally and permanently disabled since January, 1919, a claim would have been made under the policy. No reason is offered why the claim was delayed until 1931.

The case on its facts is within the rulings made in Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492, except for the opinion evidence of the physicians that Hamilton was from 1918 totally and permanently disabled within the definitions of the Secretary of the Treasury. We do not think that evidence ought to affect the case, because it should have been excluded. There has been a growing practice in these insurance cases to elicit from a physician an opinion as to whether the insured was totally

and permanently disabled within the meaning of the insurance and during its life. Its impropriety is apparent. Such an opinion confuses two questions, to wit, whether the insured could do various kinds of work without impairing his health, and whether doing such work as he could do would amount to following a substantially gainful occupation. On the first question the physician may reasonably and properly enlighten the jury by an expert opinion, but he knows no more about the second question, so far as it is not one of law, than any other man—than the jurors themselves. In such matters he is not qualified to lead and may mislead the jury. Georgia Railroad & Banking Co. v. Hicks, 95 Ga. 302, 22 S. E. 613; Chamberlayne, Handbook on Evidence, § 679. Opinions, even expert opinions, are allowed by way of exception to the general rule that a witness is to give facts observed but not his conclusions from them, and they are to be allowed only when there is real helpfulness or a necessity to resort to them. The questions put to Drs. Hall and Fussell and their answers leave it uncertain whether they meant to say that Hamilton could not do the work he did without injury to his health, or whether what he did was not a substantially gainful occupation. They could properly testify as experts on the former point, but not on the latter. Moreover, the physicians were asked the exact and entire question which the pleadings put to the jury. They might as well have been asked whether in their opinion Hamilton ought to win the case. An opinion from a witness on the exact ultimate issue before the jury may tend to embarrass rather than help them in making a verdict that is truly their own. A question seeking an opinion ought to be framed so as to avoid if possible the use of the very terms which the judge must use in his charge in taking the opinion of the jury. Some have thought an opinion on the ultimate issue to be wholly inadmissible. See United States v. Sauls (C. C. A.) 65 F.(2d) 886; and cases there collected; Jones on Evidence, § 1321. Others have denied that that ought to have any effect on the question of admitting the opinion. Wigmore on Evidence (2d Ed.) § 673. We think the true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved. See United States Smelting Co. v. Parry (C. C. A.) 166 F. 407; Mayor, etc., of Milledgeville v. Wood, 114 Ga. 370, 40 S. E. 239; Chamberlayne, Handbook on Evidence, § 680. Oftentimes an opinion may be received on a simple ultimate issue,

even when it is the sole one, as for example where the issue is the value of an article, or the sanity of a person; because it cannot be further simplified and cannot be fully tried without hearing opinions from those in better position to form them than the jury can be placed in. But such is not the case here. The issues on this insurance can be fully tried by presenting all the facts to the jury, and by confining the physicians to simple opinions on matters strictly within their province, not extending them to the complex conclusion to be reached by the jury. In United States v. Howard (C. C. A.) 64 F.(2d) 533, there was in the evidence a physician's general opinion that total and permanent disability existed, but we disregarded it, since the facts showed that the opinion was not well founded. We did the same thing in United States v. Owen (C. C. A.) 71 F.(2d) 360, and in Miller v. United States (C. C. A.) 71 F.(2d) 361. In the case at bar the trial court no doubt ignored the opinion testimony as it should have done, and on the proven facts properly directed a verdict for the defendant.

Judgment affirmed.