## UNITED STATES v. SPARKS.

### No. 5532.

Circuit Court of Appeals, Seventh Circuit,
Nov. 27, 1935.

James R. Fleming, U. S. Atty., of Fort Wayne, Ind., Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett and Randolph C. Shaw, Sp. Assts. to Atty. Gen., Luther M. Swygert, Asst. U. S. Atty., of Hammond, Ind., and Young M. Smith, of Washington, D. C., for the United States.

Jesse W. Calhoon, of Kokomo, Ind., and Remster A. Bingham, of Indianapolis, Ind., for appellee.

Before SPARKS and ALSCHULER, Circuit Judges, and BALTZELL, District Judge.

SPARKS, Circuit Judge.

This was an action upon a war risk insurance policy issued to appellee while he was in the United States military service from September 19, 1917, until his discharge on March 21, 1919. The policy insured appellee against death and permanent disability. The premiums had been paid until December, 1925, at which time the insurance lapsed for non-payment of premiums. It was reinstated in the following month upon certain conditions hereinafter referred to, which included appellee's representation as to his condition at that time. In July, 1927, the insurance was converted by appellee from term form into a government life contract, which, upon rendition of the judgment in this cause, was by order of the court surrendered and cancelled.

Appellee had been paid installments on his term insurance contract from December, 1919, until February, 1922. By virtue of those payments the contract of insurance had been reduced to $9,210. Section 301, World War Veterans' Act 1924, as amended by Act July 3, 1930, § 22, 38 U.S.C.A. § 512; and section 302 of the same act of 1924, 38 U.S.C.A. § 513.

The record discloses that when appellee entered the service he had received a partial high school education and had been engaged in farming from which he had received annually on the average of $400, and his health previously had been fair. During his service in France he was gassed, requiring hospitalization both in France and in the United States. He was given a regular, and not a disability, discharge with the notation of "10% disabled." After he left the army, he lived with his father for several years and did occasional work with a wheat threshing crew, paper hanging, house painting, and automobile repairing, and in the fall of 1921 he engaged in the garage business with a partner to whom he sold out a few months later. He was married in 1922 and has five children. In the spring of that year he moved on a farm of ninety-five acres which he rented from his father-in-law under an agreement for an even division of the grain raised, the appellee to retain the other produce and the profits of the livestock. The agreement required him to furnish a hired man, who, it was not denied, did most of the work. That arrangement continued until the father-in-law's death in 1930, at which time appellee's wife inherited a half interest in the farm and purchased the other half.

Since that time, appellee has not been able to make wages out of the farm, and rented it out by the field. Since 1923 he spent about one hundred days doing auto repair work. He received between $35 and $53 a month compensation during the period he managed the farm, and at one period of that time he received as much as $100 a month. His savings were not used to purchase the farm, but were used to pay for his physician's services in addition to the services of the government physicians.

The medical testimony of appellee disclosed that in 1919 an X-ray examination showed a tubercular condition of appellee's lung. In 1924 he had a tubercular affection in the upper left apex of one lung, and a curvature of the spine attributed to a tubercular condition. At that time, the diagnosis disclosed pulmonary tuberculosis and chronic thyroiditis, and the prognosis was recorded as fair. The curvature of the spine grew progressively worse until the time of trial, and one doctor testified that it would be progressively worse in the future.

Reports of medical examinations during 1924, submitted by appellee, disclose the following diagnoses:

April 9, 1924: Pulmonary tuberculosis, chronic incipient, inactive; chronic emphysema.

November 14, 1924: Chronic pulmonary tuberculosis, minimal, inactive; pulmonary emphysema; marked kyphosis (curvature) dorsal spine.

November 24, 1924: Chronic pulmonary tuberculosis; chronic thyroiditis.

July 31, 1925: Hyperthyroidism.

March 23, 1926: Hyperthyroidism, moderately severe; kyphosis, thoracic spine, secondary to chest condition.

April 18, 1927: X-ray: kyphosis of dorsal vertebræ with some arthritic and hyperthrophic changes involving 8th, 9th and 10th. Changes not characteristic of tuberculosis.

April 18, 1927: Toxic thyroid moderate; trauma to dorsal cord from kyphosis which is progressive; pulmonary pathology —tuberculosis, minimal, arrested; emphysema, mild.

May 9, 1928: Trauma to dorsal cord by kyphosis, secondary to chest condition; no thyroid condition shown.

June 11, 1931: Kyphosis marked lumbar region: hyperthyroidism moderate; held as pulmonary tuberculosis arrested.

In January, 1926, when appellee filed his application for reinstatement of his lapsed insurance, he stated as one consideration for the reinstatement that he was then in as good health as at the time of the due date of the premium in default, and that at that time he was not totally and permanently disabled. Dr. Carter, a witness for appellee, who examined him on November 14, 1924, and whose diagnosis is hereinbefore referred to, testified that appellee's disability on November 14, 1924, was temporary and partial.

At the trial of this cause appellee's witness, Dr. Flanagan, testified that he had examined appellee in the early spring of 1924, and had seen him once every two weeks from that time until the time of the trial, and during that time had examined him six or seven times. Thereupon, over appellant's objection, the witness was permitted to testify that at the time of each of those examinations appellee was not able to pursue any substantially gainful occupation, and do it with a reasonable degree of continuity.

■ Appellant's first contention is that the court erred in permitting Dr. Flanagan to thus state his opinion. This contention must be sustained under the ruling in United States v. Spaulding, 293 U.S. 498, 55 S. Ct. 273, 79 L.Ed. 617. See, also, United States v. Price (C.C.A.) 77 F.(2d) 345; United States v. White (C.C.A.) 77 F.(2d) 757; Hamilton v. United States (C.C.A.) 73 F.(2d) 357.

■ Appellee contends, however, that appellant reserved no exception to the court's ruling on the question which related to appellee's ability to pursue a substantially gainful occupation with any reasonable degree of continuity in the spring of 1924. Technically, that is true, but that question and answer were immediately followed by substantially the identical question with respect to the time from the spring of 1924 to the time of trial. The same objection was urged to it as was made to the first, and upon the court's adverse ruling, an exception was saved. Unquestionably, that was a sufficient basis for the assignment of error with respect to the second question, and we think also the first. In any event, we are convinced that under the circumstances it is a plain error which we are not warranted in ignoring.

It is further urged by appellee that in the Spaulding Case, supra, it is not disclosed that the reversal was based upon the

court's ruling in admitting the evidence, but because of a lack of evidence to support the verdict. While the court did reverse the judgment stating that the facts conclusively established that the soldier did not become totally and permanently disabled before his policy lapsed, yet in language quite as clear, it held that it was error to admit the evidence. We think it is fair to assume that the court reversed the judgment for both reasons. It would have been futile to order a new trial for the purpose of correcting the error with respect to the admission of evidence, because there was a lack of evidence to support a verdict for appellee in any event. It can not be said fairly that the court in that case considered the admission of the doctor's testimony a harmless error.

In the case at bar we can by no means say that the admission was harmless. The entire evidence is of such a character that the jury might easily have concluded that the doctor's testimony constituted the preponderance upon which their verdict was based.

Appellant further contends that there was no substantial evidence to support the verdict on the question of total, permanent disability. From a reading of the entire record, exclusive of the doctor's conclusions as to appellee's total, permanent disability, we are not willing to say as a matter of law that there was no substantial evidence from which it might be reasonably said that he was or was not totally and permanently disabled at the expiration of his policy.

We think there should be a re-trial of the facts. For the error in admission of the evidence, the judgment is reversed and the cause is remanded with instructions to grant a new trial and for further proceedings not inconsistent with this opinion.