### EXPRESS PUB. CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 10973.

Circuit Court of Appeals, Fifth Circuit.

July 6, 1944.

LeRoy G. Denman, of San Antonio, Tex., for petitioner.

Helen R. Carloss, Sewall Key, A. F. Prescott, and Spurgeon Avakian, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Bur. Int. Rev., and John M. Morawski, Sp. Atty., Bur. Int. Rev., all of Washington, D. C., for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

On income tax returns for 1939 and 1940 the Commissioner disallowed as business expenses salaries of $261.25 per month paid Mrs. Carrie S. Frost and $166.25 per month paid Mrs. Dorsey W. Brown as First and Second Vice-President of the petitioner. The Tax Court found that Mrs. Frost rendered personal services reasonably worth $1,000 per year, but Mrs. Brown rendered none. These conclusions are contended to be erroneous under the proven facts, and an error of law is asserted in the rejection of opinion evidence as to the reasonable value of the services.

The Tax Court finds that the petitioner has for many years published the two leading newspapers in southwest Texas, with gross income of from one and a half million to two million dollars annually, derived principally from advertising, about 75 percent of which was of a character to appeal to women. The President, Frank G. Huntress, received a salary of $25,000 per year, and the Secretary and the Treasurer each $5,400 per year. Mrs. Frost had been First Vice-President since 1922. The Tax Court finds she is a woman of intelligence, personality and moral courage, familiar with the newspaper business and the policies adopted by petitioner and carried out through its history; as First Vice-President she was qualified to take over and perform the duties of president in case of the inability to act of the president; she does not maintain a personal office in the offices of petitioner but attends all directors' meetings and approximately twice a month comes to petitioner's offices for discussion of matters of business and policy in the operation of its papers. She is subject to call by petitioner. As to Mrs. Brown the court says, she is the sister of Mrs. Frost and succeeded her husband as director and Second Vice-President on his death in 1925. She is an intelligent woman, but not so able and forceful as Mrs. Frost; her home is several hundred miles away; she maintains no business office with petitioner and attends only the monthly meetings of the board of directors and any special meetings of which she is notified. The court finds that the stock holdings of Mrs. Frost and Mrs. Brown are relatively small, and the salaries are not disguised dividends. The Tax Court concluded that Mrs. Frost, capable and experienced, and giving some time to petitioner's business, rendered personal services "over and above those of a director of the corporation", a reasonable salary for which may be deducted by petitioner as a business expense. As to Mrs. Brown it held "The only actual services she rendered were those as a director of the company in attending monthly meetings of the board and special meetings of which she was advised.

\* \* \* Certainly the record does not establish she was paid any part of her salary for any service she actually performed as second vice-president". No deduction was allowed as to her.

 We recognize that the "reasonable allowance for salaries" to be deducted as a business expense under Internal Revenue Code, Sect. 23(a) (1) (A), 26 U.S. C.A. Int.Rev.Code, § 23(a) (1) (A), is usually a question of fact, the Tax Court's determination of which, on evidence, should not be disturbed. We think, however, the Tax Court is in error as a matter of law in supposing that the salary allowances here must rest strictly on service rendered as First and Second Vice-President, with no consideration of that rendered in directors' meetings. A director is an officer of a corporation, and it may pay him for serving as such. He assumes responsibilities to stockholders and creditors for diligence, and his advice may be of great value to the business. In this case, as has been stated, a female clientele was courted and these women directors, both of them experienced and intelligent, were presumably not mere figureheads. Mrs. Brown, besides giving the time necessary to travel about five hundred miles to and from directors' meetings, incurred necessarily some expense, which is not shown to have been reimbursed otherwise than in her salary. We think the Tax Court erred in a matter of law in not considering service as directors in estimating the reasonableness of these salaries.

 Testimony of the Secretary and Assistant to the President was offered that in his opinion the salaries paid Mrs. Frost and Mrs. Brown were reasonably necessary to procure their services and was a reasonably necessary outlay. He testified that he had been in the newspaper business since 1924 and had participated in hiring persons to work for the paper. There were from 350 to 385 employees and he participated in fixing their salaries during the years, and was familiar with salaries paid for services in the newspaper business; and there was no other motive in fixing the salaries of these women than to obtain their services. The opinion of reasonableness was rejected on the ground that "it was a question the court must answer". We think the evidence was admissible. The witness was qualified to express an opinion, the standard of expertness on a question of value not being a high one. 20 Amer.Jur., Evidence, § 891, 901; 32 C.J.S., Evidence, § 545, subsecs. (a) (b). It is true that the opinion here given goes to the very question which the court is to answer, and this in general ought not to be allowed, as we ruled in Hamilton v. United States, 5 Cir., 73 F.2d 357, 358. But that decision recognized that the objection was not always good: "Oftentimes an opinion may be received on a simple ultimate issue, even when it is the sole one, as for example where the issue is the value of an article, or the sanity of a person; because it cannot be further simplified and cannot be fully tried without hearing opinions from those in better position to form them than the jury can be placed in." To the same effect, on a question of value, see 20 Am. Jur., Evidence, § 890; 32 C.J.S., Evidence, § 446. We think judges are not so well able to value supervisory service in the newspaper business as one who has long engaged in it, and that the opinions of such might be helpfully considered, though of course not binding, as sworn testimony of a fact would be.

We accordingly set aside the judgment and direct a reconsideration of the deduction for salaries, with leave to the parties to offer further evidence touching the services rendered and their reasonable value.

Judgment reversed.

HUTCHESON, Circuit Judge (concurring specially).

I concur in all that the majority has said, but I should like to add that in my opinion the Tax Court erred in not recognizing that Mrs. Brown who had been a Vice-President since 1926, did actually perform service in having her name standing at the masthead of a corporation of this character. I think it was an arbitrary fiat and not a finding of fact for the Tax Court to substitute its judgment for that of the management and determine that in thus standing for years as Vice-President, ready, able and willing to discharge the duties of that office and of the office of the President, if his absence or disability called her to that performance, Mrs. Brown was not rendering service to the company for which she should be adequately paid.