## GRUBE v. ASSOCIATED INDEMNITY CORP.

No. 13121.

United States Court of Appeals Fifth Circuit.

Feb. 7, 1951.

Rehearing Denied March 27, 1951.

Otto B. Mullinax, Dallas, Tex., for appellant.

Fred T. Porter, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and McCORD and BORAH, Circuit Judges.

McCORD, Circuit Judge.

Appellant, Margaret Grube, seeks to recover under the Workmen's Compensation Act of Texas for the death of her husband, August Grube, alleging that he was killed as. the result of a fall which he suffered while working for the United Construction Company on a job at Dallas, Texas.

The principal question presented is whether the trial court committed reversible error by instructing the jury to return a verdict for the defendant, on the theory that the evidence did not present a jury question as to whether August Grube was an employee of the United Construction Company at the time of his death.

The important and material evidence reveals that on April 15, 1948, August Grube went to mass from 5:30 a. m. to 6:00 a. m., after which he returned home, ate his breakfast, and went to the Carpenters' Local Union to look for work. About 8:00 a. m. that morning, Claud Parker, who was a foreman employed by the United Construction Company, called appellant on the telephone and requested that her husband, who had worked for him on a prior occasion, be notified to report for work immediately at the "Cotton Bowl", a football stadium at Dallas, Texas. Appellant thereupon called her husband at the Carpenters' Local and communicated this message to him.

About 45 minutes or less after the conversation between the foreman Parker, and appellant, August Grube reported to the "Cotton Bowl" for work. He had to drive his car to the grounds near the football stadium and walk up in the stands some 400 or 500 feet, which was about 100 feet or approximately 49 seats above the football field, and near where other carpenters were working under the supervision of the foreman, Parker. The construction work involved was the erection of forms and other carpenter work up in the football stadium.

When the deceased reported to the foreman, Parker, he did not have his carpenter tools and was in his street clothes. Parker, who had the authority to hire and fire employees for the United Construction Company, told the deceased to "check with the union steward and come back and see me and we would go down to the office and clear and get him ready to go to work". The deceased, complying with these instructions, located the union steward and satisfied him that he was a union man in good standing, after which he went in a shack on the premises and signed the steward's report. Deceased then went back to his car, changed into his work clothes, and after securing his tool chest, he walked back up in the football stadium. He was carrying his tool chest, and had walked past the foreman, Parker, and taken several steps in the direction of the scaffolds where the other carpenters were working, when Parker called to him that they should "go down to the time office" and "get him checked up and * * * ready to go to work." Deceased then turned around and had started down toward the playing field when he stumbled, pitched downward across the stadium seats striking his head

and body thereon, and died shortly thereafter.

It was shown that the purpose of having newly hired employees check in with the timekeeper was to have certain company payroll records and papers filled out, and identification tags or work buttons issued. It was further shown that under the working rules of the union[1] which were in effect on the job, and also according to the union steward's custom and practice, a new man was checked for his union status and permitted to sign the steward's report after he had been employed and before going to work. In this connection, the union steward who checked the deceased before his death testified that when he had been employed on the job, he had actually worked for a period of time before going to the timekeeper and signing the payroll. Another witness, a carpenter foreman, testified that it was the usual custom and practice on that job for a man to be hired by the foreman before reporting to the job steward, and that the foreman "always signed him (the employee) up before he ever cleared".

It is without dispute that the deceased had never had any ailments or diseases before his fall, and had no condition, according to the testimony of several witnesses, which could have caused his death other than his accidental injury.

It is well settled in Texas that the Workmen's Compensation statute should be liberally construed in favor of the employee, so as to effectuate that broad coverage for which the statute was originally enacted   Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1042; Travelers Insurance Company v. McKain, 5 Cir., 186 F.2d 273. Here, there is evidence that the movement of the deceased at the time of his injury and death was being directed by the foreman of United Construction Company and that the injury was sustained "while engaged in or about the furtherance of the

affairs or business of his employer", within the purview of the statute. See Texas Revised Civil Statutes, Articles 8306, 8309, Vernon's Ann.Civ.St. arts. 8306, 8309; see also, Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72. Furthermore, where the evidence is conflicting or is susceptible, as here, of more than one construction as to whether a disputed contractual relationship of employment exists, it is the province of a jury to resolve the conflicting inferences and ascertain the true facts. Cf. Liberty Mutual Ins. Co. v. Nelson, 142 Tex. 370, 178 S.W. 2d 514; Zuponcic v. Val. Blatz Brewing Co., 131 Minn. 112, 154 N.W. 790.

At the time of his injury the deceased had been offered employment as a carpenter under the terms of a union agreement and in accordance with the customary practice and procedure involved in hiring his trade on that job. He had in some sort evidenced his acceptance of the work offered by proving his union membership, changing into his work clothes, and returning to his carpenter duties with his tools ready to work. Under the union contract regulating the terms of his employment, he was entitled to be paid from the time he reported for work, even though he never drove a nail. Moreover, according to the testimony of the union steward and a carpenter foreman on the same job, by custom and practice many new employees were hired by the foreman before reporting either to the job steward or the time office. Here, the deceased had admittedly cleared his union status with the job steward and reported back to the foreman to begin work at the time of the injury. The foreman, Parker, testified that when he sent the deceased to check with the union steward he had no reason or intention not to employ him, and that he had no further questions to ask the deceased concerning his employment.

In addition to the above there was testimony by the foreman, Parker, to the effect that he had not employed the de-

---

1. The contract under which the work was being performed made certain working rules of the union a part of the contract by reference. One of these working rules was as follows:

"Any member called out on a job and not allowed to work shall receive 2 hours' pay, except in case of inclement weather when no one can work."

ceased at the time of his injury and death. Such testimony, even though admissible, was not conclusive on the question of whether the deceased had actually been employed at that time. Cf. Hamilton v. U. S., 5 Cir., 73 F.2d 257; Express Pub. Co. v. Commissioner of Internal Revenue, 5 Cir., 143 F.2d 386; Alewine v. Tobin Quarries, 206 S.C. 103, 33 S.E.2d 81; 45 Tex.Juris., Sections 40, 62. Under all the evidence adduced, we believe a jury would have been warranted in finding that after the deceased had cleared his union status with the job steward, the trip requested by Parker to the timekeeper's office for him to sign the company records and get his identification tags did not constitute a further condition precedent to his attaining an employee status, but was undertaken merely in "furtherance of the affairs or business of his employer". We therefore conclude the evidence presents a jury question as to whether the deceased was an employee of the United Construction Company at the time he met his death. Texas Revised Civil Statutes, Articles 8306, 8309, Vernon's Ann.Civ.St. arts. 8306, 8309; Liberty Mutual Ins. Co. v. Nelson, 142 Tex. 370, 178 S.W.2d 514; Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1042.

The cause is hereby reversed and remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.