## UNITED STATES v. LUND.
### No. 5330.

Circuit Court of Appeals, Seventh Circuit.
Feb. 19, 1935.

Rehearing Denied April 4, 1935.

Stanley M. Ryan, U. S. Atty., and Harold E. Hanson, Asst. U. S. Atty., both of Madison, Wis., Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Armistead L. Boothe, Atty., Department of Justice, of Washington, D. C.

Arthur W. MacLeod, of Eau Claire, Wis., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

EVANS, Circuit Judge.

Was the insured's cause of action barred by the statute of limitations?

The statute is set forth in the margin.[1]

The claim for benefits was filed with the Bureau, June 23, 1931. It was denied September 18, 1932, and notice of the denial was received by appellee on September 23, 1932. Action was begun November 10, 1932. On March 8, 1933, a guardian was appointed by a state court for appellee.

Unless appellee be rated as an incompetent or insane person, it seems tolerably clear that his cause of action was barred by the statute which limited his right to maintain this action to "six years after the right accrued" or "within one year after July 3, 1930." Excluding the period from June 23, 1931, when appellee's claim was filed with the Bureau, to September 18, 1932, the date it was denied, there still elapsed more than one year from July 3, 1930. September 28, 1932, was the last day upon which this cause of action could be brought, unless the last sentence dealing with incompetents applies.

It is the Government's contention that the provision dealing with insane persons, etc., does not apply because the statute of limitations had long been running against appellee before he became mentally incompetent, and therefore under well-recognized rules (17 R. C. L. Limitation of Actions, § 236; De Arnaud v. U. S., 151 U. S. 483, 14 S. Ct. 374, 38 L. Ed. 244) it was not tolled by his subsequent mental disability.

We are confronted by a question of statutory construction. What was the Congressional intent as evidenced by the language used?

■ We must construe this statute as a remedial one. Numerous uncertainties made this Congressional enactment (section 445, par. 2, 38 USCA) highly advisable, if not necessary. Until the amendment above quoted was enacted, there was no special statute of limitations which covered war risk insurance causes of action. The absence of a specific Federal statute on the subject, however, did not prevent the application of other state or Federal statutes. Doubtless, the resulting confusion induced Congressional action.

■ The limitations prescribed are liberal. It was evidently the intent of Congress to deal generously with war veterans who asserted claims growing out of war risk insurance policies. It is in this spirit that we must construe the last sentence which particularly provides that "infants, insane persons, or persons under other legal disability, or persons rated as incompetent, or insane by the Bureau shall have three years in which to bring suit *after the removal of their disabilities.*"

If we construe the entire section together, it seems to us that Congress intended that one who had a cause of action might bring suit thereon within

"(a) six years after the right accrued for which the claim is made,"

or

"(b) one year after July 3, 1930, whichever is the later date."

But a proviso attached to both limitations extended the time (a) "for the period elapsing between the filing in the bureau of the claim sued upon and the denial of said claim by the director," and (b) where the claimants are infants, insane persons, etc., such individuals "shall have three years * * * after the removal of their disabilities."

If the Government's contention be accepted, there would be no room in the great majority of cases for the application of this last sentence. In all cases where the cause of action arose prior to the insanity of the insured, this sentence would not apply. This would occur in such a vast majority of cases

[1] 38 USCA § 445, par. 2: "No suit on yearly renewable term insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made or within one year after July 3, 1930, whichever is the later date, and no suit on United States Government life (converted) insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made: * * * Provided further, That this limitation is suspended for the period elapsing between the filing in the bureau of the claim sued upon and the denial of said claim by the director. Infants, insane persons, or persons under other legal disability, or persons rated as incompetent or insane by the bureau shall have three years in which to bring suit after the removal of their disabilities. * * * *"

as to be well-nigh universal. Its application would, of necessity, be restricted to those instances where the total and permanent disability consisted of mental diseases. Our conclusion is that it should and does include cases where total and permanent disability occurred first and was· followed by mental incompetency or insanity of the insured.

■ Was appellee totally and permanently disabled when he was discharged from the service in January, 1919?

The evidence presents an unusual war risk insurance case. Appellee was discharged from the army in January, 1919. In February of the same year he went to work for the Gillette Rubber Company where he remained until April, 1920. He worked as a purchasing agent receiving three different salaries. He was first paid $100, then $110, and later $125 per month. He worked from eight to ten hours a day, five and a half days a week. For a short time thereafter he was employed by the United States Tire Company. In the Fall of 1920 he spent two months in a hospital in Chicago and then went to a veterans' hospital in Waukesha. He returned to this place twice later, the last visit being from September, 1923, to April, 1924.

In 1922, he took up the study of farming and attended the University of Wisconsin. He found the curriculum too difficult and went to a less exacting school but returned later to the College of Agriculture. He studied poultry raising. Later he sold automobiles, and from May, 1926, to March, 1927, he worked as a salesman for the Northern States Power Company at a salary of $100 per month. He also worked for six months as a shoe salesman. From that time on his work record was intermittent, indicating increasing disabilities.

The case is one wherein the testimony of doctors is most prominent and controlling. While there exists some contrariety of opinion there is a general acquiescence in the statement that appellee was a patient suffering from psycho-neurosis with hysteria tendencies. The opinion evidence which most strongly supports the mental incompetency theory was that of one physician who said that Lund might be suffering from dementia praecox of the paranoid type. Several opinions were offered, however, that the patient suffered from a psycho-neurotic condition which would probably clear up.

Lund testified at some length, and it is hard to reconcile his testimony with a state of mental incompetency. Moreover, at the time such testimony was given he was not as well as he was in 1919.

His war record showed he was not of robust health nor possessed of strong mental poise.

When he left the service he apparently desired a reduction in his war risk insurance. He therefore made application for and secured a reduction of five thousand dollars. This was followed by another reduction from five thousand dollars to one thousand dollars. Not until many years after his discharge was there ever any claim on his part that he was totally disabled. He continued to pay his premiums on the one thousand dollar policy. In 1932, some thirteen years after the discharge, the Government allowed him the· full monthly benefits on the one thousand dollar policy and fixed the date of such recovery as of August, 1927. His claim, here in dispute, was made approximately thirteen years after discharge.

The most persuasive· evidence in appellee's favor is the adjudication by the Government that he was incompetent as of 1927. While this relates only to a one thousand dollar policy, it is nevertheless an acknowledgment of a fact which cannot be ignored and one which appellant must find embarrassing to meet. For the purpose of disposing of this appeal, we accept the date and the fact as established.

The judgment in this case is dependent upon the sufficiency of the evidence to support the verdict that the insured was totally and permanently disabled in January, *1919*. In the last analysis the only support for such a finding is the evidence of mental incompetency. Clearly, he was neither totally nor permanently disabled *physically* in 1919. While the court or the jury, in reaching a conclusion, would undoubtedly combine the physical disability, if any there were, with the mental limitations, it is nevertheless apparent that it was the psycho-neurotic state which supplies the fact basis for a finding in his favor.

On this theory the dates fixed in the special verdict become important. The jury found he was incompetent on October 3, *1932*. It found he was permanently and totally disabled on January 8, *1919*. The date, October 3, 1932, was undoubtedly submitted to meet a statute of limitations' issue. Although favorable to him this answer to question three was, of course, not conclusive of the state of his mentality in January, 1919. Eliminating the evidence bearing upon the

mental state from the case, we are satisfied that the evidence did not present a jury question on the issue of permanent disability in January, *1919.* The jury found Lund mentally incompetent on October 3, 1932, and totally and permanently disabled in January, 1919. Can we say that the mental state found to exist in 1932 also existed in 1919? If so, why the change in the wording of the question?

The uncertainty over the correct coverage of the answer to question one only adds to our conviction that the evidence viewed most favorably to appellee was insufficient to sustain the answer to question one. In reaching this conclusion we include the evidence bearing upon the mental state as well as the physical condition.

The judgment is reversed with directions to grant a new trial.