**UNITED STATES v. CRAIG.**

No. 5570.

Circuit Court of Appeals, Seventh Circuit.

March 18, 1936.

Rehearing Denied May 12, 1936.

362

Armistead L. Boothe, of Washington, D. C., Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., James R. Fleming, U. S. Atty., of Fort Wayne, Ind., Luther M. Swygert, Asst. U. S. Atty., of Hammond, Ind., Wilbur C. Pickett, Sp. Asst. to the Atty. Gen., Young M. Smith, Atty., Department of Justice, of Washington, D. C., and Randolph C. Shaw, Sp. Asst. to Atty. Gen., for the United States.

Clarence E. Benadum, of Muncie, Ind., for appellee.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge

EVANS, Circuit Judge.

Appellee brought this action to recover upon a war risk insurance contract, because of alleged total and permanent disability.

A disagreement between the parties as to the liability under the contract, prior to the institution of suit, is a jurisdictional requisite. 38 U.S.C.A. § 445. The complaint alleges that such a disagreement did exist prior to the filing of suit, and reliance therefor is upon a letter written by the Manager of the Veterans' Bureau at Indianapolis, February 29th, 1932. After the denial of the claim and the filing of suit, appellee appealed to the Administrator's Board of Appeals. The ruling of the Manager was affirmed on May 18th, 1932. Notice of the decision of the Board of Appeals was mailed appellee on May 21st, 1932, which notice constituted a disagreement under section 19, World War Veterans' Act, as amended (38 U.S.C.A. § 445, supra). On June 11th, following, appellee filed a second paragraph of complaint which included the disagreement, as evidenced by the decision of the Board of Appeals. To this complaint, appellant appeared generally and filed its answer, a general denial to both the first and second paragraphs thereof. In so far as the issues are concerned, nothing further was done until January 14th, 1935, the date upon which the trial was begun, when appellant asked leave of court to withdraw the first paragraph of its answer, and to file a motion to dismiss the complaint. Such leave

was granted, the answer withdrawn, and the motion to dismiss filed.

On this motion to dismiss, appellant argued that the denial of the Manager was not a valid disagreement as contemplated by the statute; that appellee's appeal from the ruling nullified his suit and that the second paragraph of complaint related back to, and was a part of, the original complaint. The Court overruled the motion to dismiss, whereupon general denial answer was filed, and the case tried to a jury. At the conclusion of all the evidence, appellee dismissed the first paragraph of his complaint, and the cause was submitted upon the second paragraph. A verdict for appellee was followed by a judgment in his favor.

The first question presented is whether the District Court had jurisdiction to try the case. It is appellant's contention that even though a complete cause of action may have been stated in the second paragraph, such pleading constituted an amendment only and related back to the date of the filing of the original complaint. On this assumption it contends that no disagreement existed at that time, as required by statute, and that consequently the court was without jurisdiction. In each of the cases cited by appellant the question arose upon the effect of the filing of an amended complaint and not an additional paragraph, as in the instant case.

An entirely different situation is presented where a second paragraph of complaint is filed, as in the instant case, and a complete cause of action is therein stated. At the time such paragraph was filed, no objections were made thereto in so far as disclosed by the record. Furthermore, appellant entered a general appearance thereto and placed the same at issue by the filing of an answer in general denial. No further steps were taken, in so far as the issues were concerned, for practically two and a half years thereafter, and then only upon the commencement of the trial. It has been generally held by the Supreme Court of Indiana that a separate paragraph of complaint is a separate and distinct cause of action and does not relate back to the time of the filing of the original complaint. If an additional paragraph of complaint relies upon a cause of action that has accrued subsequent to the filing of the original complaint, it might be stricken out

on motion, or, if defendant appears thereto, he is entitled to a continuance, and failure to object constitutes a waiver. Farrington v. Hawkins, 24 Ind. 253; Jordan et al. v. Indianapolis Water Co., 159 Ind. 337, 64 N.E. 680. If appellant had entered an objection at the time of the filing of the second paragraph, and appellee had doubted his position, he still had ample time to file a new suit before being barred by the statute. However, appellant made no objection to the filing of the second paragraph. Its motion came too late and was properly overruled.

It is next contended by appellant that, even though the second paragraph of complaint constituted a separate cause of action, nevertheless such paragraph was filed one (1) day too late. The original claim was filed on June 13, 1931, which was twenty days prior to the last day for the filing of claims. 38 U.S.C.A. § 445, supra. Appellee would therefore have twenty days after the denial of his claim within which to file suit. The claim was denied by the Board of Appeals on May 21st, 1932. It is apparent, however, that appellee could not have received the notice by mail from Washington, D. C., on the day it was mailed. A reasonable length of time must be given for the receipt of notice. This is the reasonable construction to be given to the statute and we conclude the second paragraph was filed within the time permitted by the statute. See: Albek v. United States, 4 F.Supp. 1020 (D.C.); Creasy v. United States, 4 F.Supp. 175 (D. C.).

Appellee enlisted in the military service of the United States on May 3rd, 1918, and was honorably discharged therefrom on January 18th, 1919. Within a week after his enlistment the policy sued on was issued to him. It is stipulated that such insurance contract was in full force and effect up to and including midnight of March 3rd, 1919.

At the time of the trial, appellee was a resident of Marion, Indiana, where he had lived for more than twenty years. He saw no service outside of the United States; serving practically all of his time at Camp Upton, New York. At various times, while he was stationed at Camp Upton, he was granted furloughs for short periods. During such furloughs he visited with his wife, to whom he was married about a year previous, and who was employed in a hotel at Upton. She was his second wife. According to his testimony, he contracted syphillis from this wife during the time he was stationed at Camp Upton. After his discharge from the service he did not again live with her, but returned to the home of his mother. She was the widow of a civil war veteran and received a pension.

He obtained a divorce from his second wife shortly following his discharge from the service, and thereafter married again, from which wife he was also divorced. He married a fourth time, and was divorced from this wife at some time prior to the date of the trial. In his testimony he explained in detail his various activities during the time he was in the service, and stated that upon the first night thereof he contracted a bronchial trouble from exposure to the weather, and that he afterwards lost his voice as a result thereof. He spent a short time in a hospital following this experience. He also stated that during the time he was in the service he had the "flu" which greatly impaired his health. Upon his return to Marion, he began working for the Eagle Dye Works and continued such work for about two weeks, during which time he was treated, according to his testimony, by a colored physician by the name of Dr. Thomas. He later worked for the Brandan Electric Company at Marion, canvassing and taking orders, for which work he received a commission upon sales. He did some work for the Singer Sewing Machine Company at various times and places. Mr. Clarence J. Christian, chief clerk of the company, testifying from its records, stated that appellee worked a total of sixty-nine weeks for such company. He also worked as a common laborer in and around Marion.

Since his discharge from the service, appellee has been treated, according to his testimony, by Doctors Daniels, Davis, Vaughan and Bailey, aside from Dr. Thomas, and also by Doctors Kauffman and Drum, of Muncie, the latter of whom died before the date of the trial. During a part of the time since his discharge, he has received compensation from the Government. He signed a statement when discharged, that he had no reason to believe that he was suffering from the effects of any wound, injury or disease, or that he had any disability or impairment of health, which statement was attested by his commanding officer. Since discharge, appellee has, at various times, in making applica-

tions for compensation, signed statements as to his physical condition and his activities, in so far as work is concerned, and while the work done, as shown by such statements, was not continuous, yet it extended over a considerable length of time.

Several lay witnesses testified concerning his physical condition. The testimony of his brother, John, and of his nephews, is general, and did not relate to his condition immediately following his discharge. He was described as being short of breath and having fainting spells. Only one of the lay witnesses, aside from his brother and nephews, knew him at the time of his discharge.

Appellee was examined by physicians at various times, beginning with Dr. Thomas shortly after his discharge. A great deal of the medical evidence disclosed by the record, consisted of examinations made on behalf of the Veterans' Bureau, in an attempt to determine his degree of disability in passing upon his application for compensation. Doctors Walter T. Bailey and John C. Vaughan, of Marion, however, examined him as their patient. The first examination made by Dr. Bailey was on November 15, 1928. Dr. Vaughan did not attend him professionally until the summer of 1934. Dr. Charles W. Myers, Superintendent of the City Hospital at Indianapolis at the present time, gave him a thorough examination on April 20th, 1922, and arrived at a diagnosis of syphillis. At that time Dr. Myers testified that appellee was able to work. The only other medical testimony given at the trial, with the exception of medical reports in the Government files, was that of Dr. Charles D. Ryan, who examined appellee on June 4th, 1926. At that time a Wassermann test showed that he had syphillis. The reports of the physical examinations made at the request of the Government and found in its files began as early as October 7th, 1919, immediately following the application of appellee for compensation. Practically all of these reports are signed by O. W. McQuown, Examiner, and indicate that the examination was made at Marion. His condition is diagnosed as bronchitis chronic, and the early reports state that he was at that time physically able to resume his former occupation. Later reports give a diagnosis of pulmonary tuberculosis arrested, and fix his degree of disability at twenty per cent. No doctor who has treated him as a patient gave testimony as to his condition prior to November, 1928. No explanation is to be found in the record as to his failure to call as witnesses the doctors whom he said treated him since his discharge, other than Doctors Thomas and Drum, both of whom died prior to the trial.

Appellant also contends that it constituted reversible error for two medical experts—Doctors Vaughan and Bailey—to be permitted to testify that, in their opinion, appellee was totally and permanently disabled at the time of their examination of him and for many years prior thereto. Such witnesses did not examine appellee, nor even become acquainted with him, until some ten years after the lapse of his insurance contract. They did not express an opinion as to his physical condition during the life of such contract. However, they were permitted, over objection of appellant, to express an opinion upon the ultimate fact to be decided by the jury. Each witness testified that, in his opinion, appellee "is totally and permanently disabled." A similar situation arose in the case of United States v. Cole, 82 F. (2d) 655, decided by this court on the 18th day of March, 1936, in which we said: "While these various opinions were not as to his condition [at the time the insurance contract was in force, yet] they were expressions upon the ultimate fact to be decided by the jury and are objectionable." Such evidence should not be admitted, and its admission is prejudicial and very clearly invades the province of the jury. United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617; United States v. Sparks (C.C.A.7th) 80 F.(2d) 392; United States v. Matory (C. C.A.7th) 71 F.(2d) 798; United States v. Price (C.C.A.5th) 77 F.(2d) 345; United States v. Sampson (C.C.A.9th) 79 F.(2d) 131.

The medical evidence, supplemented by the evidence of lay witnesses, fails to convince us that appellee was totally and permanently disabled on March 3rd, 1919. Instead it shows clearly that he was not *totally and permanently* disabled at that time. It failed to present a jury question on this issue. The motion for a directed verdict in appellant's favor should have been granted.

The judgment of the District Court is reversed with direction to grant a new trial.

### On Petition for Rehearing.

A petition for rehearing or for modification of the opinion has been filed by the Government in this case. It asks us to modify our opinion and to hold that section 19 (see 38 U.S.C.A. § 445) limits the time within which a suit on war risk insurance may be instituted after rejection of the claim to one year after July 3, 1930, the "limitation is suspended for the period elapsing between the filing * * * of the claim * * * and the denial of said claim by the director." In this case the period remaining was twenty days, if the date of the *order* of disallowance be taken. We held that it was twenty days from the date the claimant *received* notice of the rejection. The Government asks for a ruling which limited the right to sue to twenty days from the decision.

An examination of the cases which have been submitted and those which we have found indicates a contrariety of views. The following cases hold that the limitation begins to run from the date of the disallowance: Tyson v. United States, 76 F.(2d) 533 (C.C.A.4); Corn v. United States, 74 F.(2d) 438 (C.C.A.10); Harrop v. United States, 10 F.Supp. 753 (D.C. Neb.).

The following cases hold that the limitation begins to run either from the date the notice was received or a reasonable time after notice of disallowance was mailed to the veteran: United States v. Walker, 77 F.(2d) 415 (C.C.A.5); Creasy v. United States (D.C.) 4 F.Supp. 175; Albek v. United States, 4 F.Supp. 1020 (D. C.N.Y.). See also the following cases where the question is raised but its decision was not necessary to disposition of the case: Tyson v. United States, 56 S.Ct. 390, 80 L.Ed. ——, decided by the Supreme Court, February 3, 1936; Weaver v. United States, 72 F.(2d) 20 (C.C.A.4); Walton v. United States, 73 F.(2d) 15 (C.C.A.8); United States v. Gower, 71 F.(2d) 366 (C. C.A.10); United States v. Thomson, 71 F.(2d) 860 (C.C.A.10); Stallman v. United States, 67 F.(2d) 675 (C.C.A.8).

The court in the late case of United States v. Walker (C.C.A.) 77 F.(2d) 415, had the benefit of the holdings of various courts when it adopted the view that the suspension of the limitation ends upon receipt of notice and "not before the claimant could have been aware that he had the right to bring suit on his claim."

As we said in United States v. Lund, 76 F.(2d) 723, 724, "The limitations prescribed are liberal. It was evidently the intent of Congress to deal generously with war veterans who asserted claims growing out of war risk insurance policies. It is in this spirit that we must construe the last sentence which particularly provides, * * *."

Actuated by such generous motives it is inconceivable that Congress should give to a war veteran the right to litigate an issue of fact in the Federal court and at the same time so restrict that right as to make it, in certain cases, purely imaginary. If the construction which the Government places upon the deductions from the time bar be adopted, then Congress gave the war veteran who lives near Washington, D. C., rights which were denied those who reside in the far west. The war veteran would in many instances not learn of the rejection of his claim in time to bring suit, if he lived in Alaska or Honolulu or even on the Pacific coast, if the limitation began to run from the date of the order of rejection rather than from the date he learns of the rejection. We can ascribe no such intention to Congress.

The petition for rehearing or to modify the opinion is denied.