**AMERICAN CONST. CO. v. UNITED STATES.**

No. 48992.

United States Court of Claims.

Oct. 7, 1952.

William R. Brown, Houston, Tex., J. Ross Gamble, Washington, D. C., and Baker, Botts, Andrews & Parish, Houston, Tex., on the briefs, for plaintiff.

William A. Stern, II, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

Plaintiff's claim arises under the Lucas Act, 60 Stat. 902, as amended, 62 Stat. 992, 41 U.S.C.A. § 106 note. Plaintiff suffered net losses without fault or negligence on its part under Government contracts to furnish work, supplies, and services, between September 16, 1940, and August 14, 1945, and asserts that it is therefore entitled to relief from such losses under the Lucas Act, supra.

The first question to be considered is whether plaintiff's petition was filed in the Court of Claims within the statutory period allowed for appeal from the decision of the War Contract Hardship Claims Board, to which plaintiff's claim had been presented. Section 6 of the Lucas Act, supra, provides:

"Whenever any claimant under this Act is dissatisfied with the action of a department or agency of the Government in either granting or denying his claim, such claimant shall have the right within six months to file a petition with the Court of Claims * * *."

The Board denied plaintiff's claim in a decision dated June 24, 1948. The Recorder of the Board on July 16, 1948, signed a letter transmitting that decision to plaintiff. The letter was not mailed by the Board, however, until July 21, 1948, when it was registered in the departmental post office in the Pentagon, and it was not actually received by plaintiff until its delivery in the regular course of the mails in Houston, Texas, on July 24, 1948. Plaintiff had no notice of the Board's decision prior to that date. Plaintiff's petition was filed in the Court of Claims on January 24, 1949, on the last day of the six-month period after receipt of the letter of notification.

Defendant contends that the six-month limitation on filing an appeal from the Board's decision began to run, and ran continuously, from June 24, 1948, the date the decision was signed by the members of the Board, or in any event no later than July 21, 1948, when the letter of notification was mailed to plaintiff. If defendant's conten-

tion is correct plaintiff's petition is out of time and must be dismissed.

Plaintiff contends that its suit is timely because the very earliest date from which the six-month period for appeal could run was July 24, 1948, when plaintiff received notice of denial of its claim.

█ We have carefully considered the arguments and authorities advanced by defendant. We have concluded, however, that the six-month period for appeal under the Lucas Act should be computed from July 24, 1948, the date plaintiff received notice of the Board's action.

In reaching this conclusion we have considered a number of cases arising under the War Risk Insurance Act, 38 U.S.C.A. § 445, in which a similar problem was presented. That act provided for a suspension of the statute of limitations from the time of filing a claim thereunder with the Veterans Bureau, until the claim was denied by that agency. In determining the timeliness of appeal to the courts from such denial the question arose as to whether the statute of limitations should be computed from the date of the decision by the agency, or from the date of receipt of notice thereof by a claimant.

The various federal circuit courts of appeals and district courts were not unanimous in their holdings. Despite suggested distinctions, see Amodio v. RFC, Em.App., 191 F.2d 862, 864, the conflict was fundamentally one of statutory interpretation. Illustrative of the divergence of opinion among the federal courts are United States v. Walker, 5 Cir., 1935, 77 F.2d 415, certiorari denied 296 U.S. 612, 56 S.Ct. 132, 80 L.Ed. 434; United States v. Tarrer, 5 Cir., 1935, 77 F.2d 423 certiorari denied 296 U.S. 574, 56 S.Ct. 125, 80 L.Ed. 405; United States v. Lockwood, 5 Cir., 1936, 81 F.2d 468; United States v. Green, 6 Cir., 1936, 84 F.2d 449; United States v. Craig, 7 Cir., 1936, 83 F.2d 361, 365 (rehearing); Baraby v. United States, D.C.Mont.1932, 1 F.Supp. 443; Creasy v. United States, D.C.Va.1933, 4 F.Supp. 175; and Albek v. United States, D.C.N.Y.1933, 4 F.Supp. 1020, all of which state that the period of limitations began

to run only with the receipt by the claimant of notice of the disposition of his claim; and contra, Tyson v. United States, 4 Cir., 1935, 76 F.2d 533; Stallman v. United States, 8 Cir., 1933, 67 F.2d 675; United States v. Thomson, 10 Cir., 1934, 71 F.2d 860; Corn v. United States, 10 Cir., 1934, 74 F.2d 438; Harrop v. United States, D.C. Neb.1935, 10 F.Supp. 753; and Hunnewell v. United States, D.C.N.H.1933, 2 F.Supp. 389, which state that the period of limitations began to run either on the date the claim was acted upon, or on the date of mailing of notice thereof. Expressly in accord with the latter group of cases is Amodio v. RFC, supra, decided by the Emergency Court of Appeals in 1951, arising under the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 924(a), which holds that under that act the time for appeal was to be computed from the date of mailing of notice of denial of protest of orders issued thereunder. At least two other cases under the War Risk Insurance Act each have been cited on both sides of the question, United States v. Gower, 10 Cir., 1934, 71 F.2d 366, cited in Tyson and Craig, both supra, and Weaver v. United States, 4 Cir., 1934, 72 F.2d 20 cited in Walker and Corn, both supra. See also United States v. Pastell, 4 Cir., 1937, 91 F.2d 575, 112 A.L.R. 1130.

The decision of the Fourth Circuit in Tyson v. United States, supra, was appealed to the Supreme Court, 297 U.S. 121, 56 S.Ct. 390, 80 L.Ed. 520, and there affirmed on other grounds, the Court expressly refraining from passing on the question here under consideration. Thereafter the WRIA was amended to effect a substantial change in the formula for computation of the period of appeal, obviating further dispute on this point. Robinson v. United States, 5 Cir., 84 F.2d 885.

The language of the statute of limitations contained in the Lucas Act, supra, supports defendant's contention here even less than that of the WRIA, under which there was such a conflict of opinion. Thus even if the WRIA cases were unanimous in holding that limitations began to apply no later than date of mailing of notice, those cases would not be conclusive as to the inter-

pretation of the Lucas Act. But not even unanimity under the WRIA is available to support defendant's contention.

Further, to the extent that the problem raised under the WRIA is relevant, we are more persuaded by the reasoning of the Walker, Green, and Craig, etc., line of cases than by those to which the circuit court opinion in Tyson belongs.

Until the Board had taken final action plaintiff as a matter of law could not have filed suit in this court. Richardson v. United States, 86 F.Supp. 1019, 114 Ct. Cl. 695, 701. Until plaintiff knew the nature of that final administrative action it did not know whether it would be necessary or advisable to appeal. Section 6 of the Lucas Act clearly contemplates that a claimant shall have a full six months in which to appeal. There is no showing that notice on July 24, 1948, was received otherwise than in the due course of the mails. Cf. Stallman v. United States, supra. "It was certainly never intended that claimants should, either in person or by representatives; attend upon the [Board] and await [its] disposition of their claims." United States v. Green, supra, 84 F.2d at page 450. Nothing in the Lucas Act required the Board to act within a given period of time, from which plaintiff would be chargeable with notice that the Board's decision was rendered on a particular day.

Common sense argues against a rule which would deprive a claimant of any part of his six-month period for appeal prior to the time he received actual or constructive notice that there was a decision from which to appeal. And in the absence of statutory language requiring such a construction it would be an unwarranted infringement of his rights under Section 6 to gratuitously adopt such a rule.

Defendant has relied to some extent upon United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 285, 75 L.Ed. 598, for the proposition that the statute of limitations under the Lucas Act was not tolled until receipt by plaintiff of notice of the Board's action, but that plaintiff had the burden of ascertaining the nature of such action and was charged with notice from the date thereof.

The applicable statute in the Michel case, in directing the Commissioner of Internal Revenue to notify a taxpayer by mail " 'within 90 days after * * * disallowance' " of a claim for refund of taxes, thus expressly differentiated between "disallowance" and notification thereof. The Supreme Court held that the statute required computation of the period of limitations from the date of the administrative action upon the claim rather than from the date of notice. No such differentiation is made in the Lucas Act.

Furthermore, in Michel the plaintiff was not required to wait until disallowance of his claim by the Commissioner before filing suit. He could sue after the expiration of six months from the date of filing his claim with the Commissioner, even if the latter had not yet acted. The plaintiff actually waited over three years longer, and then sought to claim the advantage of an alternative provision permitting suit within two years after disallowance of his claim by the Commissioner. Plaintiff argued unsuccessfully that the failure of the Commissioner to give notice of his action, as directed by the statute, extended the period within which plaintiff might file suit. The Court held in effect that the statute placed upon plaintiff the burden of ascertaining whether the Commissioner had disallowed his claim, as a condition of his right to sue under the alternative provision.

At no time prior to notice of the Board's action in the instant case, however, could plaintiff reasonably have been expected to file suit, or to have notice of accrual of its right to sue. We believe therefore that defendant cannot successfully dissociate the decision in the Michel case from the statute and circumstances upon which it was based.

The Supreme Court in Skelly Oil Co. v. Phillips Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194, in considering the date of issuance of a certificate of public convenience and necessity by the FPC, stated:

" * * * But surely a certificate cannot be said to have been issued for purposes of defining rights and the seeking of reconsideration by an aggrieved person if its substance is merely in the bosom of the Commission. Knowledge of the substance must to some extent be made manifest. Here the content of the order of November 30, 1946, was not made public until December 2, 1946, * * *." 339 U. S. at page 676, 70 S.Ct. at page 881.

Similarly knowledge of the substance of the Board's action must have been communicated to plaintiff before its rights were affected. The statute of limitations did not begin to run until July 24, 1948, when plaintiff received knowledge of the Board's decision, and plaintiff's suit was filed within the required six-month period.

It may be noted that on November 26, 1948, plaintiff wrote the Board asserting that the Board's opinion contained a misstatement of fact. This letter may be fairly construed as urging reconsideration by the Board of its previous decision. There was nothing in the Lucas Act, of course, to prevent the Board from reconsidering its earlier action, if it so desired. The General Counsel of the Board replied to plaintiff by letter dated December 10, 1948, as set forth in the footnote.[1] This letter was received by plaintiff on December 16, 1948.

Plaintiff thereafter, on December 22, 1948, filed suit in the United States District Court for the Southern District of Texas seeking the same relief it claims here. On January 18, 1949, defendant in the district court moved to dismiss plaintiff's suit for want of jurisdiction. The motion was granted on March 11, 1949, with a notation by the district judge that he had found no authority to transfer the case from the district court to the Court of Claims, as plaintiff had requested.[2]

In connection with these facts plaintiff has argued that even if the period of limitations would have otherwise been computed from some date prior to July 24, 1948, when it received notice of the Board's action, nevertheless the statute was tolled by the request for reconsideration and the reply thereto by the General Counsel. Our holding makes it unnecessary to reach this question.

There is a further question in the case, however. All of the losses by plaintiff between September 16, 1940, and August 14, 1945, were incurred in connection with War Department Contract No. W–2161–eng–183 for the construction of McCloskey General Hospital at Temple, Texas. Plaintiff's total losses under that contract, without fault or negligence by plaintiff, and exclusive of anticipated profits, were $73,727.74. As a result of profits derived from other Government contracts plaintiff's *net losses* under all such contracts for this period was $59,768.42. This is the figure which plaintiff is presently seeking to recover.

Before plaintiff can recover under the Lucas Act, however, it must show that there was a "written request for relief * * * filed * * * on or before August 14, 1945 * * *" within the meaning of the Lucas Act, and that such request was sufficient to apprise the War Department that it was being asked to grant extra-legal relief from such losses. Fogarty v. United States, 340 U.S. 8, 71 S.Ct. 5, 95 L.Ed. 10.

Plaintiff has submitted documentary evidence of several written claims filed with the Government during the period in question, and contends that these documents

---

1. The General Counsel denied there had been a misstatement of fact in the Board's opinion and concluded:
   "In any event, the subsequent action to which you refer in your letter in connection with your notification of the Board of Contract Appeals, in my opinion, would have no effect upon the ultimate decision of the Board in this case and in fact is not relevant for consideration in the disposition of the claim."

2. It was during the pendency of defendant's motion to dismiss in the district court that plaintiff filed its petition in the Court of Claims, on January 24, 1949.

encompass a written request for extra-legal relief sufficient under the Lucas Act.

These documents had their origin in claims in connection with the hospital contract, specifically involving premium time and excess costs, field overhead incurred in curb and gutter construction, and loss of anticipated profits from deletion of certain road construction work from plaintiff's contract.

A considerable portion of the documents is unmistakably couched in terms of legal right to relief from the specific items enumerated. In the same documents, however, and equally unmistakably, plaintiff repeatedly emphasized that it was suffering losses on the other portions of the contract, and on the contract as a whole. There is no indication that plaintiff ever believed that the mere fact it suffered net losses on the contract entitled it to legal relief. The fact of net losses was asserted, and indeed was material, only as a justification for extra-legal relief, and was framed in those terms.

Plaintiff relied upon the fact of such losses both in its requests for relief as to the specific items which initially occasioned such requests, for which it was also requesting legal relief, and also in its broader requests for relief from net losses on other portions of the contract and on the contract as a whole. Plaintiff even advanced the proposition of renegotiation of the entire contract to alleviate such losses. Cf. Howard Industries v. United States, 83 F. Supp. 337, 113 Ct.Cl. 231. Although in some instances interwoven with assertions of legal rights, there is nevertheless present throughout these documents a concurrent and distinct assertion by plaintiff of the equities of its situation, and a request for relief on that basis.

We have quoted in our findings portions of these documents which support plaintiff's contention that there was a sufficient request filed with the War Department, and it is unnecessary to restate them here. There is little doubt, however, that in total effect they constitute a request for extra-legal relief from plaintiff's losses under the contract.

We have also noted in our findings that for a period of several months during the pendency of plaintiff's administrative appeal with respect to the deleted portions of its contract, defendant favorably considered modification of the contract by a supplemental agreement which recited that it was executed pursuant to the First War Powers Act, 50 U.S.C.A.Appendix, § 611. Relief under that act was not a matter of right, but a matter of grace, and within the discretion of the contracting agency. Simpson v. United States, 102 F.Supp. 562, 121 Ct.Cl. 506. Only failure of higher authority to approve the amount involved in the modification signed by plaintiff and recommended by defendant's District Engineer prevented the final execution of such modification.

■■ This is not an instance of a request for relief couched solely in terms of legal right under conditions which manifestly justified only extra-legal relief. Cf. Depew Paving Ct. v. United States, 122 Ct.Cl. 151. And the mere fact that plaintiff asserted right to legal relief as to specific items of those losses is no bar to recovery when there is also a sufficient request for extra-legal relief under the Lucas Act. Humphrey v. United States, 121 Ct.Cl. 390, 101 F.Supp. 759. Considering in their entirety the documents upon which plaintiff relies, we hold that there was a written request between September 16, 1940, and August 14, 1945, within the meaning of the Lucas Act, and sufficient under the Fogarty decision to apprise the War Department that it was being asked to grant extra-legal relief for losses suffered by plaintiff under the hospital contract.

Defendant has based a further argument on Sections 204 and 307 of Executive Order 9786, U.S.Code Cong. Service 1946, p. 1848 which defendant contends bar plaintiff's recovery. The substance of this argument was considered and rejected in Howard Industries, supra, and Jardine Mining Co. v. United States, 88 F.Supp. 265, 115 Ct.Cl. 279, and in a number of

other cases. Although the defendant has requested the court to reconsider its holding in those cases we find no basis upon which to depart from those previous holdings.

Plaintiff is equitably entitled to the sum of $59,768.42, in settlement of its claim. Therefore, pursuant to Section 6 of the Lucas Act, supra, an order will be entered directing the Department of the Army to settle such claim in accordance with the findings of this court, in the amount of $59,768.42.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.